STATE OF IOWA, Appellant, v. MARION TRAAS, Appellee.

No. 45565.

June 17, 1941.

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, Clark E. Lovrien, County Attorney, and Frank W. Senneff, Special Prosecutor, for appellant.

L. R. Boomhower, for appellee.

BLISS, J.—The defendant operated a restaurant and beer tavern in a two-story frame building in the town of Crystal Lake, Hancock County, Iowa. In addition to the rooms occupied by the family, he kept two or three rooms for occasional transients. He owned the stock of merchandise, the furniture, counters and other equipment used in his business, and also his household goods. The building and its contents were totally destroyed by fire in the very early morning of June 2, 1940, shortly after he had closed, a little after midnight. He was charged with willfully and maliciously burning the property. He was indicted for the burning of the *building*. Shortly after the trial, a County Attorney's Information was filed charging him with the felonious burning of the contents of the building. The trial of the latter charge is awaiting our decision of this appeal. It is because of the pending charge and trial that the State is strenuously urging us to review the record and to pass upon the errors assigned for reversal.

While the State may appeal from a judgment adverse to it in a criminal case (1939 Code section 13994), the decision of this court, on such an appeal, is circumscribed by section 14012, which provides: "If the state appeals, the supreme court cannot reverse or modify the judgment so as to increase the punishment, but may affirm it, and shall point out any error in the pro-

ceedings or in the measure of punishment, and its decision shall be obligatory as law.'' Under the provisions of this section and our decisions, the judgment of the trial court is a finality with respect to the discharge of the defendant. He cannot again be tried for the offense charged in that indictment. State v. Kinney, 44 Iowa 444; State v. Vail, 57 Iowa 103, 10 N. W. 297; State v. Ford, 161 Iowa 323, 142 N. W. 984; State v. Jackson, 128 Iowa 543, 105 N. W. 51; State v. Gilbert, 138 Iowa 335, 116 N. W. 142; State v. Keeler, 28 Iowa 551; State v. Johnson, 157 Iowa 248, 138 N. W. 458; State v. Kirkman, 206 Iowa 364, 220 N. W. 57; State v. Woodruff, 208 Iowa 236, 225 N. W. 254; State v. Meyer, 203 Iowa 694, 213 N. W. 220; State v. Dietz, 162 Iowa 332, 143 N. W. 1080.

As stated in some of the above-mentioned cases, and in others, this court, in appeals by the State in criminal cases, has generally refused to review the testimony as a whole to determine whether the trial court erred in ruling that the evidence was insufficient to justify a submission of the case to the jury. Since the defendant cannot be again tried for the same offense, it would serve no purpose to pass upon errors respecting matters of fact which could be of no benefit in the trial of criminal cases in the future. State v. Little, 210 Iowa 371, 228 N. W. 67; State v. Friend, 213 Iowa 544, 239 N. W. 132; State v. Tibbetts, 213 Iowa 552, 239 N. W. 133; State v. Niehaus, 209 Iowa 533, 228 N. W. 308; State v. Gilbert, supra; State v. Kirkman, supra; State v. Mackey, 82 Iowa 393, 48 N. W. 918. But as also stated in the cases cited, if the appeal involves questions of law, either substantive or procedural, whose determination will be beneficial generally, or guide the trial courts in the future, the decisions of this court thereon will be obligatory as law. See also State v. Drain, 205 Iowa 581, 218 N. W. 269; State v. Meyer, 203 Iowa 694, 213 N. W. 220; State v. Ward, 75 Iowa 637, 36 N. W. 765; State v. Johnson, 200 Iowa 324, 204 N. W. 273; State v. Johnson, supra, (157 Iowa 248, 138 N. W. 458). As stated in State v. Woodruff, 208 Iowa 236, 245, 225 N. W. 254, 257, in such cases: ''It is not for us to determine the facts. Our sole duty is to determine the proper rules of law applicable to the facts.''

Summarizing the facts briefly in this case, we find that the record shows quite conclusively : that the defendant from about the year 1931, in addition to the fire involved here, had had two houses burn, in which he was living, the last one in 1939 ; he had a barn burn in which there was considerable machinery and a carload of onions ; the onions, he claimed, were not insured ; he lost a new Nash car by fire ; whether it was insured or not, does not appear ; there was no objection to the testimony about other fires ; he collected insurance on the other three fires ; in November, 1939, he rented and moved into the building in Crystal Lake ; the lease was for a year, and the rent of $260 was all to be paid in advance ; he paid $169 in advance, which would cover the rental to about July 1, 1940 ; he was having some controversy with the landlord about the payment of the remaining rent, repairs on the place, and some difficulty because the landlord refused the use of a vacant lot for outdoor moving pictures ; a tenant in the rooms adjoining the building occupied by defendant, testified that in the spring of 1940, the defendant told him the building should be burned, and it was going to be, and asked the witness (tenant) if he had insurance on his household goods ; this tenant moved his goods out in the early morning of May 31, 1940, between 12 :30 o'clock and 5 :30 o'clock ; defendant took his wife and children to Booneville on Memorial Day, May 30, 1940, and on returning without them the following day, asked the tenant if he had moved his goods ; in the fall of 1939, defendant purchased the restaurant stock, equipment, household goods, beds, etc., for about $300 ; he added some to it, and on May 14, 1940, he insured the stock for $400, the fixtures, etc., for $600, and the household goods for $1,000 ; the insurance agent never examined the property ; quite a number of household articles, pictures, albums, bedding, heirlooms, and other small articles, none of much value, but many of which had been in the building during the week preceding the fire, were found in a trunk and a box of the defendant in a garage which he rented near by, although there was an empty storeroom in the building occupied by him ; on the nights of May 30th, 31st, and June 1st, business men, in pairs, spent the night in a service station across the street watching defendant's building ; on the night of the

fire, two of them saw the defendant, after closing for the night, about 12:30 a. m., turn off the electric lights and for almost a half hour he moved about the rooms with a flashlight which he turned on and off; while he was doing this, they saw flames suddenly burst out in the building; they gave the fire alarm and the chemical engine arrived in a few minutes; the fire could not be checked and the property was completely burned in less than an hour; the electric wiring in the building was old and exposed, and the insulation was worn off in places; the electric motor to the refrigerating system was in poor condition, but it had been removed on May 31, 1940, and another substituted, and defendant testified that just after closing the place and before going to bed that night, he went to the basement to retard the cooling system, and the motor was not heating and there was no evidence that it was not operating properly; he said that a short time before June 1st, a rag had caught on fire from the wiring; there was opinion testimony that a fire could start from a heating motor or defective wiring.

Defendant moved for a directed verdict upon the grounds that the essential elements of the crime had not been proven, and that the evidence was circumstantial and not of the required probative weight, and that the presumption of accidental fire had not been overcome. The trial court sustained the motion because, as stated, he refused to accept the testimony of the two watchers with respect to the place of the starting of the fire, and that without their testimony, the evidence was insufficient to establish the guilt of the defendant beyond a reasonable doubt. The court was in error in directing a verdict for the defendant for the reasons stated. This court may set aside a judgment on a verdict of guilty when the verdict is very clearly against the weight of the evidence, or is so utterly wanting that it cannot be sustained. State v. Lowenberg, 216 Iowa 222, 227, 243 N. W. 538, 541; State v. Heath, 224 Iowa 483, 276 N. W. 35; State v. Carson, 185 Iowa 568, 170 N. W. 781; State v. Saling, 177 Iowa 552, 159 N. W. 255; State v. Pilkington, 92 Iowa 92, 60 N. W. 502; State v. King, 198 Iowa 325, 334, 197 N. W. 981; State v. McKenzie, 204 Iowa 833, 216 N. W. 29; State v. Carlson, 224 Iowa 1262, 276 N. W. 770; State v. Hessenius, 165 Iowa 415,

434, 146 N. W. 58, L. R. A. 1915A, 1078. The district court may direct a verdict for the accused under the same circumstances. But when either court so rules, it ordinarily accepts the evidence as true, but holds that notwithstanding the evidence is taken at its face value, it is insufficient to establish the guilt of the defendant. It is not for either court to pass upon the credibility of the witnesses, or any of them, or the weight to be given their testimony in a criminal action. Those matters are for the determination of the jury, and the trial court invaded the jury's province in basing its order to direct upon their consideration. State v. Wrenn, 194 Iowa 552, 564, 188 N. W. 697; State v. Dietz, 162 Iowa 332, 143 N. W. 1080; State v. Greenland, 125 Iowa 141, 100 N. W. 341; State v. Hessenius, supra; State v. Woodruff, supra (208 Iowa 236, 245, 225 N. W. 254).

While the error of the trial court was one of law, the State is entitled to have this court pass upon the merits of the question because of the pending criminal charge against the defendant based upon the burning of the personal property. There was a very similar situation and holding in Commonwealth v. Ramey, 279 Ky. 810, 132 S. W. 2d 342. We are, of course, in no way passing upon whether the pending charge lies as a matter of law, or of fact.

We, therefore, hold that since the defendant has been discharged by the judgment of the trial court, there can be no order of remand, but the action of the trial court in directing a verdict for the defendant must be and it is reversed.—Reversed.

CHIEF JUSTICE and all JUSTICES concur.