**STATE of Iowa, Appellant,**

v.

**Roger HANNA, Appellee.**

**No. 53963.**

Supreme Court of Iowa.

Sept. 2, 1970.

Rehearing Denied Nov. 9, 1970.

Richard C. Turner, Atty. Gen., G. Douglas Essy, Asst. Atty. Gen., George Knoke, County Atty., of Council Bluffs, for appellant.

Ray Pogge, Council Bluffs, for appellee.

MASON, Justice.

This is an appeal by the State from the trial court's order declaring section 123.100

Code, 1966 as amended by the Sixty-second General Assembly does not provide a specific punishment and therefore fails to create a crime so that no conviction can be had thereunder.

Roger Hanna was indicted for knowingly keeping on the licensed premises of the Mayfair Club, Inc., alcoholic liquor on which the special tax had not been paid to the State contrary to this section.

Defendant pleaded not guilty and was tried to a jury which returned a guilty verdict. After this verdict but before sentenced defendant filed post-trial motions alleging authority to revoke the liquor license and forfeit the bond of the license holder upon conviction under this section was restricted to the Liquor Control Commission and the district court was without power to impose this sanction. He further alleged such revocation and forfeiture constituted "other penalties" within the language of section 123.91 and therefore the court was without power to impose the jail sentence or fine authorized in section 123.-91. Hanna argued there could be no offense under these circumstances.

The court sustained defendant's motion and refused to pronounce sentence and judgment. It recognized that the jury had found defendant guilty of having done the things charged in the indictment but reasoned that since the power to revoke the license and forfeit the license holder's bond was limited to the Liquor Commission, section 123.100 did not provide a punishment which the court could inflict. Thus, there could be no conviction.

The State's appeal perfected in the manner directed by Code section 793.4 presents two issues, whether the court erred: (1) in holding section 123.100 as amended has no punishment provisions and therefore sets forth no crime and (2) in not applying the penalties provided in section 123.91 after defendant's conviction.

Section 123.100 as amended was in force when the incident upon which the indictment is based occurred. It imposes on every license holder a special tax equivalent to 15 percent of the price established for general sale to the public. Provision is made for place of payment and in section 2 it is stated, " * * * conviction of a violation of this section shall cause the license held to automatically be revoked and the license shall immediately be surrendered by the holder, and the bond of the license holder shall be forfeited to the commission."

Section 123.91 of this chapter sets forth penalties for violation of the chapter. "Unless other penalties are herein provided, any person who violates any of the provisions of this chapter, or who makes a false statement concerning any material fact in submitting an application for a permit or license, shall be punished by a fine of not less than three hundred dollars nor more than one thousand dollars, or by imprisonment in the county jail for not less than three months nor more than one year, or by both such fine and imprisonment."

I. "Section 793.1, Code, * * * 1966, gives the State the right to appeal in a criminal case. It is settled in Iowa that an appeal by the State will be permitted only if it 'involves questions of law, either substantive or procedural, whose determination will be beneficial generally, or guide the trial courts in the future * * *.' State v. Kriens, 255 Iowa 1130, 1131, 125 N.W.2d 263, 264, and citations. But there are statutory limitations upon the effect or results of that appeal. Code section 793.20 provides that if the State appeals, this court cannot reverse or modify the judgment in favor of defendant so as to increase the punishment, 'but may affirm it, and shall point out any errors in the proceedings or in the measure of punishment, and its decision shall be obligatory as law.'" State v. Wardenburg, 261 Iowa 1395, 1397–1398, 158 N.W.2d 147, 148–149.

A determination of the question of law presented by the issues is desirable for the benefit and guidance of the bench and bar.

II. The court's order is based on the general rule that a criminal statute

without a penalty clause is of no force and effect. See 22 C.J.S. Criminal Law § 25.

It arrived at its conclusion there could be no conviction by first determining revocation of the license and forfeiture of the license holder's bond upon conviction as directed in section 123.100 constituted "other penalties" so that the general penalty provision of section 123.91 for violations of the act did not apply. It then concluded there being no other punishment the court could impose, the jury's verdict of guilty did not convict Hanna of a crime.

The legislature in enacting the Liquor Control Act granted the commission certain functions, duties and powers which are defined in section 123.16. In subparagraph 7 the commission is granted the power "to issue and grant permits, liquor control licenses and other licenses; and to revoke all such licenses and permits for cause, under this chapter." Subparagraph 4 of section 123.27 provides for the licensee posting bond. As pointed out, the legislature also provided that upon conviction of a violation of section 123.100 the license was to be automatically revoked and the license holder's bond forfeited.

It was the expressed legislative intent that the commission as the administrative agency be empowered to revoke licenses (subparagraph 7 of section 123.16), and enforce forfeiture of bonds involved (section 123.100).

The basic question seems to be whether the legislature in providing for such revocation and forfeiture by the commission intended this should constitute the "other penalties" referred to in section 123.91 thereby rendering ineffective the penal provisions of that section to conviction under section 123.100.

In Severson v. Sueppel, 260 Iowa 1169, 1174, 152 N.W.2d 281, 284, we said:

"In interpreting a statute we look to the object to be accomplished, the evils sought to be remedied, or the purpose to be subserved and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. [Citations] * * *."

The legislative intent in enacting the Liquor Control Act is expressed in section 123.1:

" * * * [It] shall be deemed an exercise of the police power of the state, for the protection of the welfare, health, peace, morals and safety of the people of the state, and all its provisions shall be liberally construed for the accomplishment of that purpose, and it is declared to be the public policy that the traffic in alcoholic liquors is so affected with a public interest that it should be regulated to the extent of prohibiting all traffic in them, except as hereinafter provided for in this chapter."

In Hedges v. Conder, 166 N.W.2d 844, 852, (Iowa 1969) we repeated this principle enunciated in our earlier cases:

"The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention or purpose of the legislature as expressed in the statute. * * * [Citing authorities]."

In Janson v. Fulton, 162 N.W.2d 438, 442–443, (Iowa 1968) we said: "The construction of any statute must be reasonable and must be sensibly and fairly made with the view of carrying out the obvious intention of the legislature enacting it."

The legislature provided for automatic revocation and forfeiture upon conviction of the license holder for doing any prohibited acts enumerated in section 123.100. If the trial court's ruling is to stand there never could be an automatic revocation or forfeiture under this statute since no conviction could be had by reason of the omission of a penalty clause.

In Janson v. Fulton, supra, the court continued:

"It is a familiar, fundamental rule of statutory construction that, if fairly possible, a construction resulting in unreasonableness as well as absurd consequences will be avoided. * * * [Citing authorities].

"To put the matter differently, a statute should be given a sensible, practical, workable and logical construction. * * * [Citing authorities].

" * * *.

"The intent to enact an unworkable statute is not to be imputed to the legislature unless the statutory language expressly requires it. * * * [Citing authorities].

" 'A statute is a solemn enactment of the state acting through its legislature and it must be assumed that this process achieves an effective and operative result. It cannot be presumed that the legislature would do a futile thing. "The court is warranted in assuming that the legislative intent was to attain a rational and sensible result, not an absurd or ridiculous consequence." ' * * * [Citing authorities]."

■■ Governed by the foregoing principles we interpret subparagraph 7 of section 123.16 as it relates to section 123.100 as expressing a legislative intent enforcement of the mandatory revocation and forfeiture specified in the later section should be the prerogative of the commission to impose as a civil sanction for judicially determined violations of this section. It was not intended the provision for imposition of this civil sanction by the administrative agency be construed as providing "other penalties". We interpret "other penalties" as used in section 123.91 as applying solely to those criminal penalties reserved to a court of law rather than including civil sanctions exclusively imposed by an administrative agency.

■ Therefore, we hold section 123.91 furnishes a criminal penalty which the court is authorized to inflict for violation of section 123.100 thus making it enforceable and effective as a criminal statute.

To construe the provision for revocation and forfeiture by the commission as constituting a bar to the court's power to impose the penalties authorized in section 123.91 for a violation of section 123.100 would defeat the expressed legislative intent, render the statute impracticable and unworkable, resulting in unreasonable, illogical consequences.

The court erred in failing to pronounce sentence and judgment on the jury verdict.

■ III. After the guilty verdict the trial court refused the State's application for revocation of defendant's license and forfeiture of his bond. The trial court was correct. Enforcement of this civil sanction was the exclusive function of the commission.

However, in ruling on post-trial motions in which defendant asked that the commission be enjoined from revoking his license or forfeiting his bond the court did not enjoin the commission but determined this administrative agency was without authority to revoke either defendant's license or forfeit his bond because he had not been convicted of a crime as there was no penalty the court was authorized to inflict. We do not agree.

In Division II, supra, we have determined section 123.91 provides a penalty the court is authorized to impose for violation of section 123.100.

Ordinarily, we would let this end the matter but we believe the trial court erred in another manner which should be discussed because of its importance to the commission in carrying out the legislative intent.

In arriving at its conclusion the commission was without authority to enforce revocation and forfeiture, the court must have decided this statute requires an application of the technical meaning of conviction. This was error.

■ The word "conviction" is of equivocal meaning, and its use in a statute presents a question of legislative intent.

■ In the restricted or technical legal sense in which it is sometimes used, the word "conviction" includes the status of

**508**

being guilty of, and sentenced for, a criminal offense, whether that status is established after confession of guilt by a guilty plea or after determination by a jury verdict upon an assertion of innocence. Stated otherwise technically the word means the final consummation of the prosecution against the accused including the judgment or sentence rendered pursuant to an ascertainment of his guilt.

In its general and popular sense and frequently in its ordinary legal sense, the word "conviction" is used in the sense of establishment of guilt prior to and independently of judgment and sentence by a verdict of guilty or a plea of guilty. State v. Superior Court, 141 A.2d 468, 471–472, (Del.1958); Bubar v. Dizdar, 240 Minn. 26, 60 N.W.2d 77, 79–80; Commonwealth v. Greer, 215 Pa. Super. 66, 257 A.2d 317, 320–321. See also State v. Delano, 161 N.W.2d 66, 72–73, (Iowa 1968); 24 C.J.S. Criminal Law § 1556 (2); 9A Words and Phrases, pages 270–282.

■ The word "conviction" is used in its ordinary legal sense in section 123.100 to signify merely an ascertainment of guilt in the trial court and not as requiring entry of a judgment thereon as a basis for license revocation and bond forfeiture required by this section.

In Maguire v. Fulton, 179 N.W.2d 508, (Iowa 1970), this court considered the meaning of "conviction" more particularly "final conviction." Although a different question was presented there, many of the authorities cited deal with the use of the word as presenting a question of legislative intent.

Of course, the order of the trial court is a finality with respect to discharge of defendant, but its conclusion the commission would not have authority to revoke defendant's license or forfeit his bond, its action in sustaining defendant's post-trial motions, and its refusal to pronounce sentence and judgment upon defendant's conviction is —Reversed, but not remanded.

All Justices concur.